ELECTRONICALLY FILED

CASE NO._____                    JEFFERSON CIRCUIT COURT
                                            CIVIL DIVISION _____

LISA S. ENSEY, AS PARENT AND STATUTORY                    PLAINTIFFS
GUARDIAN ON BEHALF OF D.E., MINOR

KIMBERLY HUNT, AS LEGAL GUARDIAN ON BEHALF
OF J.T., MINOR

v.

SHELTER GENERAL INSURANCE COMPANY,                       DEFENDANTS
a Missouri Insurance Company, qualified in Kentucky

Serve:  Secretary of State, Commonwealth of Ky.
        P.O. Box 718
        Frankfort, KY  40602

        **For further service to:**
              **Randa Rawlins, Process Agent**
              **Shelter General Insurance Company**
              **1817 West Broadway**
              **Columbia, MO  65218**

SHELTER MUTUAL INSURANCE COMPANY,
a Missouri Insurance Company, qualified in Kentucky

Serve:  Secretary of State, Commonwealth of Ky.
        P.O. Box 718
        Frankfort, KY  40602

        **For further service to:**
              **Randa Rawlins, Process Agent**
              **Shelter General Insurance Company**
              **1817 West Broadway**
              **Columbia, MO  65218**

**EXHIBIT**

**1**

## COMPLAINT

COME NOW, Plaintiffs, LISA ENSEY, statutory guardian of D.E., Minor, and

KIMBERLY HUNT, legal guardian of J.T., minor, (hereinafter collectively referred to as

"Plaintiffs"), by and through their attorneys, Jeffrey A. Sexton and John W. Byrnes, hereby

complain and allege against Defendant, SHELTER INSURANCE COMPANY, a Missouri

Insurance Company qualified in Kentucky (hereinafter "Defendant"), as follows:

### THE PARTIES

1. Plaintiffs LISA S. ENSEY, Guardian, and D.E., a minor, are and at all relevant times
   were residents of 532 ST. ANDREWS DRIVE, VINE GROVE, KENTUCKY 40175.
   Plaintiffs KIMBERLY HUNT, Guardian, and J.T., a minor, are and at all relevant times
   were residents of 8305 DAVEMON DRIVE, LOUISVILLE, KY 40228.  LISA S.
   ENSEY and KIMBERLY HUNT bring this action on behalf of said minors pursuant to
   Kentucky Rule of Civil Procedure 17.03(1).

2. Defendant SHELTER GENERAL INSURANCE COMPANY ("Shelter General") is and
   was at all times relevant hereto, Missouri Insurance Company, having its principal place
   of business at 1817 WEST BROADWAY, COLUMBIA, MO 65218, and qualified and
   registered to conduct insurance underwriting and business in the Commonwealth of
   Kentucky.

3. Defendant SHELTER MUTUAL INSURANCE COMPANY (Shelter Mutual) is and was
   at all times relevant hereto, Missouri Insurance Company, having its principal place of
   business at 1817 WEST BROADWAY, COLUMBIA, MO 65218, and qualified and
   registered to conduct insurance underwriting and business in the Commonwealth of
   Kentucky

## JURISDICTION AND VENUE

4.  Plaintiffs incorporate the preceding paragraphs of this Complaint as though said
    paragraphs were fully set forth at this point herein.

5.  Venue is proper in this district because the underlying judgment (EXHIBITS 1 and 2
    hereto) which is the subject matter of this lawsuit was rendered on May 31, 2017, by a
    jury properly seated in Jefferson Circuit Court, Division Five (5), Case No. 15-CI-
    006458, Louisville, Jefferson County, Kentucky, and the subject insurance policy was
    issued by Defendants Shelter General and Shelter Mutual (collectively "Shelter Insurance
    Companies") in Kentucky to the underlying named insured, Mark Blankenship.

6.  This is a civil case with an amount in controversy exceeding five thousand dollars
    ($5,000.00); therefore, jurisdiction and venue are properly before this Court pursuant to
    KRS 24A.120, *inter alia.*

## GENERAL ALLEGATIONS

1.  Plaintiffs incorporate the preceding paragraphs of this Complaint as though said
    paragraphs were fully set forth at this point herein.

2.  On December 22, 2015, civil Case No. 15-CI-006458 was filed in Jefferson Circuit Court
    against Carrie Blankenship, *inter alia.*

3.  Shelter Insurance Companies by letter dated December 7, 2016 (EXHIBIT 3 hereto)
    admitted on page 2 beneath paragraph 15 that Carrie Blankenship had coverage, subject
    to terms, conditions and exclusions, under a Homeowner's Insurance Policy (H03 KY1),
    16-71-4659530-1 ("Policy") associated with her home located at 163 Beechnut Court
    where she lived with her husband, Mark Blankenship.

4.  Shelter denied coverage to Carrie Blankenship under the Policy and refused to defend her
    or enter an appearance in the underlying action for the reasons set forth in EXHIBIT 3.

5.  On May 31, 2017—almost six months after Shelter refused to enter the case—a jury
    awarded $2.5 million to D.E., minor, and $1.5 million to J.T., minor, against Carrie
    Blankenship and the Judgment (EXHIBIT 4 hereto) was entered on _____.

6.  Thereafter Plaintiffs' counsel made a demand upon Shelter Insurance Companies under
    the Policy for payment of the $4 million judgment on July 4, 2017, and again on August
    9, 2017.  Both times Shelter Insurance Companies denied coverage and refused to pay.

7.  Plaintiffs file this action to collect $4 million from Shelter Insurance Companies and the
    statutory rate of pro rata interest tolling at 12% per annum.

8.  By declining the opportunity to defend Carrie Blankenship on December 7, 2016 (even
    with a reservation of rights), the time has passed for Shelter Insurance Companies to seek
    a bifurcation or to seek a declaration of rights and/or deny coverage under the Policy.
    Kentucky case law is quite clear on the matter, specifically *see American Cas. Co. of
    Reading, Pa. v. Shely*, 234 S.W.2d 303 (1950).

9.  Shelter Insurance Companies (see paragraph 3) is obligated to pay the $4 million
    Judgment claim under the terms of the policy.

10. Shelter Insurance Companies lacks a reasonable basis in law and fact for denying the
    claim because, *inter alia*, it failed to conduct a reasonable investigation based upon all
    available information before refusing to pay the claim and deny coverage on December 7,
    2016; and, again in July and August, 2017, in violation of KRS 304.12-230(4).

11. Shelter Insurance Companies knew there was no reasonable basis in fact and law for
    denying the claim and acted with reckless disregard for whether a claim existed because

the surveillance video showing Carrie Blankenship's covered negligence under the Policy
was referenced in the Complaint from which EXHIBIT 3 quoted so heavily; yet, Shelter
Insurance Companies never bothered to watch the video because Plaintiffs' counsel has
the only copy in their possession and was never asked for the video by Shelter Insurance
Companies.

12. Shelter Insurance Companies knew there was no reasonable basis in fact and law for
denying the claim and acted with reckless disregard for whether a claim existed because
the Jury Instructions and Judgment only cover negligence (covered by the Policy) yet
Shelter Insurance Companies still denies coverage in direct defiance of the language of
the Jury Instructions and Judgment (EXHIBITS 1 and 2 hereto).

13. Shelter Insurance Companies' motives are evil and driven by the oldest sin—greed.
Their actions are outrageous and recklessly indifferent to the rights of the 4 and 5-year
old minors at the heart of this case abused of children by daycare workers and their
negligent supervisor, Carrie Blankenship.

14. Plaintiffs have both suffered emotional distress—including but not limited to anger,
distrust and depression—as a result of Shelter's dastardly refusal to honor in good faith
the Policy coverage the Blankenships selected.

15. Defendants Shelter Insurance Companies owe Plaintiffs the following duties, among
others as contemplated by KRS 304.12-230: (a) a duty to honor the Policy contract for
the entire policy duration; (b) a duty to conduct a prompt, reasonable and diligent
investigation of the facts of the case to determine the validity of the claims made by
Plaintiffs against Defendant Allstate; (c) a duty to evaluate the Plaintiffs' claims fairly;
(d) a duty to attempt in good faith to effectuate a prompt, fair and equitable settlement of

a claim where liability is reasonable clear; (e) a duty to act promptly and reasonably in settling the claim; (f) a duty not to reject a reasonable and fair offer of settlement; (g) a duty not to put insureds or third-party beneficiaries through unnecessary litigation; (h) a duty not to put insureds' assets at risk; (i) a duty to refrain from actions that would injure the Plaintiffs' ability to obtain the benefits of the Policy (insurance contract); and (j) a duty of good faith and fair dealing.

16. Upon information and belief, the Plaintiffs allege that Defendants Shelter Insurance Companies breached their duties owed to Plaintiffs as contemplated by KRS 304.12-230 by, among other things:  (a) failing to honor the Policy (insurance contract); (b) failing to conduct a prompt,  reasonable and diligent investigation of the claims made against their insured, Carrie Blankenship; (c) failing to evaluate the claim(s) fairly; (d) failing to tender the policy limits to settle the claims; (e) failing to attempt in good faith to effectuate a prompt, fair and equitable settlement of the claim(s); (f) not making any reasonable settlement offers to offer the claim(s); (g) failing to accept reasonable and fair offers of settlement; (h) putting their insureds (Plaintiffs as third-party beneficiaries as Judgment creditors herein) through unnecessary litigation; (i) putting their insureds' personal assets at risk; and (j) failing to pay any reasonable portion of the Policy coverage to Plaintiffs herein.

17. As a direct and approximate result of Shelter Insurance Companies' breaches of their duties that they owed to the Plaintiffs herein as third-party beneficiary Judgment creditors, Plaintiffs have been deprived of the benefits to which they were entitled and for which the Blankenships bargained in the insurance contract, and Plaintiffs were forced to

incur expenses to obtain the benefits to which they were otherwise entitled and Plaintiffs

have otherwise been damaged in amounts to be determined at trial.

18. Defendants' actions herein constitute bad faith insurance practices as contemplated by

KRS 304.12-230 among other legal causes of action as enumerated below.

19. The Court should enter a declaratory judgment, that Defendant must pay the $4 million

Judgment plus interest to Plaintiffs herein, in order to satisfy the damages sustained by

Plaintiffs in the underlying Jefferson Circuit Case No. 15-CI-006458.

20. Plaintiffs have been required to engage the services of attorneys, and, accordingly, have

incurred attorneys' fees and costs to bring this action.

## FIRST CAUSE OF ACTION
(Breach of Contract)

21. Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs of

this Complaint as though said paragraphs were fully set forth herein.

22. There is a valid and existing insurance agreement between Carrie Blankenship and Mark

Blankenship and Defendants and Plaintiffs are third-party beneficiaries thereunder.

23. Plaintiffs performed or were excused from performance under the agreement.

24. Defendants breached the agreement by, *inter alia*, refusing to properly compensate

Plaintiffs.

25. Plaintiffs sustained damages in excess of the Policy limits as a result of Defendants'

breach of the agreement.

26. Plaintiffs have been required to retain the services of an attorney to commence this action

and are entitled to attorney's fees and costs.

## SECOND CAUSE OF ACTION
(Contractual Breach of the Implied Covenant of Good Faith and Fair Dealing)

Filed          17-CI-004895   09/15/2017          David L. Nicholson, Jeff NOT ORIGINAL DOCUMENT
                                                                    09/18/2017 10:39:36 AM
                                                                    86941

27. Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs of this Complaint as though said paragraphs were fully set forth herein.

28. There is implied in every contract a covenant of good faith and fair dealing.

29. Mark Blankenship and Carrie Blankenship and Defendants entered into a valid and existing insurance agreement and Plaintiffs are third-party beneficiaries thereunder.

30. Defendants owed Plaintiffs a duty of good faith and fair dealing.

31. Defendants breached their duty of good faith and fair dealing by, *inter alia*, refusing to properly compensate Plaintiffs.

32. Plaintiffs sustained damages in excess of the Policy limits as a result of Defendants' breach of the implied covenant of good faith and fair dealing.

33. Plaintiffs have been required to retain the services of an attorney to commence this action and are entitled to attorney's fees and costs.

### THIRD CAUSE OF ACTION
(Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing)

34. Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs of this Complaint as though said paragraphs were fully set forth herein.

35. There implied in every contract a covenant of good faith and fair dealing.

36. Mark Blankenship and Carrie Blankenship and Defendants entered into a valid and existing insurance agreement and Plaintiffs are third-party beneficiaries thereunder.

37. Defendants owed Plaintiffs a duty of good faith and fair dealing.

38. As insurers, Defendants owed Plaintiffs a fiduciary-like duty and there was a special element of reliance by the Blankenships and Plaintiffs as third-party beneficiaries.

39. Defendant breached their duty of good faith and fair dealing by, *inter alia*, refusing
    to properly compensate Plaintiffs for their injuries sustained in the underlying Jefferson
    Circuit Case No. 15-CI-006458.

40. Plaintiffs sustained damages in excess of the Policy limits as a result of Defendants'
    breach of the implied covenant of good faith and fair dealing.

41. Plaintiffs are further entitled to punitive damages as a result of Defendants' breach of the
    implied covenant of good faith and fair dealing.

42. Plaintiffs have been required to retain the services of an attorney to commence this action
    and are entitled to attorney's fees and costs.

### FOURTH CAUSE OF ACTION
(Bad Faith in violation of KRS 304.12-230)

43. Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs of
    this Complaint as though said paragraphs were fully set forth herein.

44. The acts and omissions of Defendants as complained of herein, and yet to be discovered
    in this matter, constitute bad faith.

45. Plaintiffs sustained damages in excess of the Policy limits as a result of Defendant's bad-
    faith.

46. Plaintiffs are further entitled to punitive damages as a result of Defendants' bad-faith.

47. Plaintiffs have been required to retain the services of an attorney to commence this action
    and are entitled to attorney's fees and costs.

### FIFTH CAUSE OF ACTION
(Unfair Trade Practices)

48. Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs of
    this Complaint as though said paragraphs were fully set forth herein.

49. Defendant has engaged in unfair trade practices, including Defendants' failure to properly settle Plaintiffs' claim.

50. Plaintiffs sustained damages in excess of the Policy limits as a result of Defendants' unfair trade practices.

51. Plaintiffs are further entitled to punitive damages as a result of Defendants' unfair trade practices.

52. Plaintiffs have been required to retain the services of an attorney to commence this action and are entitled to attorney's fees and costs.

## SIXTH CAUSE OF ACTION
(Intentional Infliction of Emotional Distress according to *Indiana Insurance Co. v. Demetre*, 2013-CA-000338-MR, 2015 WL 393041 (Ky. App. Jan. 30, 2015))

53. Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs of this Complaint as though said paragraphs were fully set forth herein.

54. The intentional and reckless acts and omissions of Defendants as complained of herein, and yet to be discovered in this matter, constitute intentional and reckless infliction of emotional distress.

55. Plaintiffs sustained damages in excess of the Policy limits in the form of severe emotional distress as a result of Defendants' intentional, outrageous and intolerable conduct which offends general accepted standards of morality and decency—especially by a supposedly trusted national insurance company taking premiums in return for promises.

56. Plaintiffs are further entitled to punitive damages as a result of Defendants' intentional infliction of emotional distress.

57. Plaintiffs have been required to retain the services of an attorney to commence this action and are entitled to attorney's fees and costs.

Filed          17-CI-004895    09/15/2017         David L. Nicholson, Jeff~~NOT ORIGINAL~~ DOCUMENT
                                                                            09/18/2017 10:39:36 AM
                                                                            86941

### SEVENTH CAUSE OF ACTION

(Negligent Infliction of Emotional Distress according to *Indiana Insurance Co. v. Demetre*,
2013-CA-000338-MR, 2015 WL 393041 (Ky. App. Jan. 30, 2015))

58. Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs of
this Complaint as though said paragraphs were fully set forth herein.

59. The negligent acts and omissions of Defendants as complained of herein, and yet to be
discovered in this matter, constitute negligent infliction of emotional distress.

60. Plaintiffs sustained damages in excess of the Policy limits in the form of severe emotional
distress as a result of Defendants' negligent, yet outrageous and intolerable conduct
which offends general accepted standards of morality and decency—especially by a
supposedly trusted national insurance company taking premiums in return for promises.

61. Plaintiffs are further entitled to punitive damages as a result of Defendants' negligent
infliction of emotional distress.

62. Plaintiffs have been required to retain the services of an attorney to commence this action
and are entitled to attorney's fees and costs.

**WHEREFORE**, Plaintiffs pray for judgment against the above-named Defendants as

follows:

1.  For general damages in an amount in excess of the Policy limits;

2.  For special damages in an amount of $4 million;

3.  For punitive damages in an amount to be determined at trial;

4.  For reasonable attorney's fees and costs of suit;

5.  For interest on the Judgment of $4 million at the statutory rate of 12% in effect at the
time of the entry of Judgment; and

**Filed**          17-CI-004895    09/15/2017          David L. Nicholson, Jeff~~NOT ORIGINAL~~ DOCUMENT
                                                                            09/18/2017 10:39:36 AM
                                                                            86941

For such other and further relief as the Court deems just and proper.

DATED this 15th day of September, 2017.

JEFFREY A. SEXTON
JOHN W. BYRNES
Attorneys for Plaintiffs

*Jffrey A. Sexton*

325 W. Main St., Ste. 150
Louisville, KY 40202
(502) 893-3784 (Office)
(800) 524-3139 (Fax)

CASE NO. 15-CI-006458

JEFFERSON CIRCUIT COURT
DIVISION FIVE (5)
JUDGE MARY SHAW

LISA S. ENSEY, *et al.*                                   PLAINTIFFS

v.

KIDZ UNIVERSITY, INC., *et al.*                          DEFENDANTS

## JUDGMENT

\* \* \* \* \* \*

The above-styled action having come on for trial before this Court and a jury, and
the issues having been duly tried, and the jury having duly rendered its verdict and finding
that Carrie Blankenship failed to comply

1. With her duty as Director of Kidz University, Inc., by not supervising the students,
   and said failure to comply was a substantial factor in causing injury to both minors
   JT and DE

2. With her duty to supervise and train the staff of Kidz University, Inc., in her
   capacity as Director, and said failure was a substantial factor in causing injury to
   both minors JT and DE

3. With her duty as Director of Kidz University, Inc., to adhere to and comply with all
   rules and regulations of the Commonwealth of Kentucky concerning child abuse
   prevention, training, and reporting of actual and/or suspected child abuse, and said
   failure was a substantial factor in causing injury to both minors JT and DE

   **WHEREFORE, IT IS ORDERED** that the Plaintiff, minor D.E., *on behalf?* recover from the
Defendant, Carrie Blankenship, the total sum of $1.5 million, with interest thereon at
the rate of 12% per annum; and,

Presiding Judge: HON. A. C. MCKAY CHAUVIN (630220)

EXH.: 000001 of 000002

Exhibit One (1)

2

**IT IS FURTHER ORDERED** that the Plaintiff, minor J.T., *m behalf of* recover from the

Defendant, Carrie Blankenship, the total sum of $2.5 million, with interest thereon at the

rate of 12% per annum.

This is a final and appealable judgment and there is no just cause or reason for

delay.

Date: _____

Judge Mary Shaw
Jefferson Circuit Court
Division 5

Presiding Judge: HON. A. C. MCKAY CHAUVIN (630220)

EXH : 000002 of 000002

Filed          17-CI-004895   09/15/2017          David L. Nicholson, Jeff NOT ORIGINAL DOCUMENT
                                                                          10/12/2017 07:23:20 AM
                                                                          70008

꜀E NO. 15-CI-006458                          **JEFFERSON CIRCUIT COURT**
                                                   **DIVISION FIVE (5)**
                                                 **JUDGE MARY SHAW**

**LISA S. ENSEY, et al.**                               **PLAINTIFFS**

**v.**

**KIDZ UNIVERSITY, INC., et al.**                        **DEFENDANTS**

## JURY INSTRUCTIONS

\* \* \* \* \* \*

Nine or more of you must agree in order to make any determination required by these Instructions. The nine or more who agree on one, however, need not be the same jurors who agree on others. If all twelve of you agree on the answers to any of the determinations to which you are required to respond, the Foreperson, whom you shall elect, can sign for you. Each response on which you are not unanimous must be signed by the nine or more of you who agree.

Presiding Judge: HON. A. C. MCKAY CHAUVIN (630220)

EXH.: 000001 of 000014

**Filed**          17-CI-004895     09/15/2017               David L. Nicholson, Jeff**NOT ORIGINAL** **DOCUMENT**
                                                                                    **10/12/2017 07:23:20 AM**
                                                                                    **70008**

## INSTRUCTION NO. 1

It was the duty of Carrie Blankenship, as the Director of Kidz University

daycare charged with the supervision of its students, to exercise toward David

and Jalon that degree of care and skill which is expected of a reasonably

competent and ordinarily prudent daycare Director while supervising students of

like age as David and Jalon while acting under like or similar circumstances.

Presiding Judge: HON. A. C. MCKAY CHAUVIN (630220)

EXH : 000002 of 000014

Filed          17-CI-004895    09/15/2017          David L. Nicholson, Jeff**NOT ORIGINAL** DOCUMENT
                                                                                    10/12/2017 07:23:20 AM
                                                                                    70008

### QUESTION NO. 1

Do you believe from the evidence that Carrie Blankenship failed to comply with this duty listed in Instruction No. 1 and that such failure was a substantial factor in causing injury to David Ensey?

YES: _✓_____

NO: _____

_____
FOREPERSON

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____

Presiding Judge: HON. A. C. MCKAY CHAUVIN (630220)

EXH : 000003 of 000014

Filed          17-CI-004895    09/15/2017          David L. Nicholson, Jefferson Circuit Clerk

## QUESTION NO. 1A

Do you believe from the evidence that Carrie Blankenship failed to comply

with this duty in Instruction No. 1 and that such failure was a substantial factor in

causing injury to Jalon Thompson?


YES: ___✓___

NO: _____


_____

FOREPERSON


_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____

Presiding Judge: HON. A. C. MCKAY CHAUVIN (630220)

EXH : 000004 of 000014

Filed          17-CI-004895   09/15/2017     David L. Nicholson, Jeff**NOT ORIGINAL** DOCUMENT
                                                                    10/12/2017 07:23:20 AM
                                                                    70008

## INSTRUCTION  NO. 2

It was the duty of Carrie Blankenship, as the Director of Kidz University daycare charged with the supervision and training of its staff, including but not limited to Nikoletta Nunley, to exercise toward David and Jalon that degree of care and skill which is expected of a reasonably competent and ordinarily prudent daycare Director while supervising students of like age as David and Jalon while acting under like or similar circumstances.

Presiding Judge: HON. A. C. MCKAY CHAUVIN (630220)

EXH : 000005 of 000014

Filed          17-CI-004895   09/15/2017          David L. Nicholson, Jeff~~NOT ORIGINAL~~ DOCUMENT
                                                                          10/12/2017 07:23:20 AM
                                                                          70008

## QUESTION NO. 2

Do you believe from the evidence that Carrie Blankenship failed to comply with this duty in Instruction No. 2 and that such failure was a substantial factor in causing injury to David Ensey?

YES: ✓

NO: _____

_____
FOREPERSON

Presiding Judge: HON. A. C. MCKAY CHAUVIN (630220)

EXH : 000006 of 000014

David L. Nicholson, Jeff~~NOT ORIGINAL~~ **DOCUMENT**
**10/12/2017 07:23:20 AM**
**70008**

## QUESTION NO. 2A

Do you believe from the evidence that Carrie Blankenship failed to comply with this duty in Instruction No. 2 and that such failure was a substantial factor in causing injury to Jalon Thompson?

YES: ✓

NO: _____

FOREPERSON

Presiding Judge: HON. A. C. MCKAY CHAUVIN (630220)

EXH : 000007 of 000014

Filed          17-CI-004895    09/15/2017          David L. Nicholson, Jeff̶e̶r̶s̶o̶n̶ C̶i̶r̶c̶u̶i̶t̶ C̶l̶e̶r̶k̶ NOT ORIGINAL DOCUMENT
                                                                      10/12/2017 07:23:20 AM
                                                                      70008

## INSTRUCTION NO. 3

It was the duty of Carrie Blankenship, as the Director of Kidz University daycare charged with the adherence to and compliance with the rules and regulations concerning child abuse prevention, training and reporting of suspected and/or actual child abuse of the Commonwealth of Kentucky's Cabinet for Health and Family Services' Office of the Inspector General's Division of Regulated Child Care, to exercise toward David and Jalon that degree of care and skill which is expected of a reasonably competent and ordinarily prudent daycare Director while supervising and training staff including, but not limited to, Nikoletta Nunley, and students of like age David and Jalon while acting under like or similar circumstances.

Presiding Judge: HON. A. C. MCKAY CHAUVIN (630220)

EXH : 000008 of 000014

Filed          17-CI-004895    09/15/2017          David L. Nicholson, Jefferson Circuit Clerk

## QUESTION NO. 3

Do you believe from the evidence that Carrie Blankenship failed to comply with this duty in Instruction No. 3 and that such failure was a substantial factor in causing injury to David Ensey?

YES: _✓_

NO: _____

FOREPERSON

Filed          17-CI-004895    09/15/2017         David L. Nicholson, Jeff**NOT ORIGINAL DOCUMENT**
                                                                 10/12/2017 07:23:20 AM
                                                                 70008

## QUESTION NO. 3A

Do you believe from the evidence that Carrie Blankenship failed to comply

with this duty in Instruction No. 3 and that such failure was a substantial factor in

causing injury Jalon Thompson?

YES: ___✓___

NO: _____

_____
FOREPERSON

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____

Presiding Judge: HON. A. C. MCKAY CHAUVIN (630220)

EXH : 000010 of 000014

## INSTRUCTION NO. 4

If you answered "Yes" to Question No. 1, Question No. 2, and/or Question

No 3, you have found for David Ensey. You will now determine from the evidence

what sum or sums of money will fairly and reasonably compensate David Ensey,

for such of the following damages you believe, from the evidence, he sustained

by reason of Carrie Blakenship's breach of duty:

(a) Necessary and reasonable future medical expenses reasonably certain
to be incurred in the future:

$ _600,000_

(b) Mental and physical pain and suffering he has endured or is
reasonably certain to endure:

$ _600,000_

(c) Any permanent impairment incurred:

$ _300,000_

TOTAL: $ _1.5 million_

How many occurrences of bodily injury to David Ensey do you find based
upon Carrie Blankenship's breach of duty?

_7_

Presiding Judge: HON. A. C. MCKAY CHAUVIN (630220)

EXH : 000011 of 000014

**Filed**                     17-CI-004895     09/15/2017                     David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
10/12/2017 07:23:20 AM
70008

FOREPERSON

Bobby Sullivan

Tamara Tilley

Blanca Estrada.

Jennifer Hymes

Angela Re

Mark H. Riggs

Ene Vincent

Judy Garrison

Presiding Judge: HON. A. C. MCKAY CHAUVIN (630220)

EXH : 000012 of 000014

### INSTRUCTION NO. 4A

If you answered "Yes" to Question No. 1A, Question 2A and/or Question

No. 3A, you have found for Jalon Thompson.  You will now determine from the

evidence what sum or sums of money will fairly and reasonably compensate

Jalon Thompson, for such of the following damages you believe, from the

evidence, he sustained by reason of Carrie Blankenship's breach of duty:

(a) Necessary and reasonable future medical expenses reasonably certain
to be  incurred in the future:

$  1,100,000

(b) Mental and physical pain and suffering he has endured or is
reasonably certain   to endure:

$   600,000

(c) Any permanent impairment incurred:

$   800,000

TOTAL: $  2.5m

How many occurrences of bodily injury to Jalon Thompson do you find
based upon Carrie Blankenship's breach of duty?

6    .

**Filed**          17-CI-004895   09/15/2017          David L. Nicholson, Jeffer̶s̶o̶n̶ ̶C̶i̶r̶c̶u̶it̶ NOT ORIGINAL DOCUMENT
                                              10/12/2017 07:23:20 AM
                                              70008

FOREPERSON

Presiding Judge: HON. A. C. MCKAY CHAUVIN (630220)

EXH : 000014 of 000014

**SHELTER
INSURANCE
COMPANIES**

**JEFFERY M. GUILLORY**
SENIOR LITIGATION ATTORNEY

TELEPHONE NUMBER:     (573) 214 - 4687
FACSIMILE NUMBER:     (573) 446 - 7315

December 7, 2016

Litigation Assistant:   Lindsey Colvin
Telephone Number:       (573) 214-7486
Email Address:          LColvin@shelterinsurance.com

Ms. Carrie Blankenship
163 Beechnut Court
Shepherdsville, Kentucky 40165-8096

RE:   Named Insured:      Mark Blankenship
      Claimant:           Lisa Ensey, individually and as parent of D.E., a minor,
                          Kimberly Hunt, individually and as legal guardian of J.T., a
                          minor
      Claim Number:       HO1714594

Dear Ms. Blankenship:

On October 3, 2016, Shelter received notice of a lawsuit that Lisa Ensey, individually and as parent of D.E., a minor, and Kimberly Hunt, individually and as legal guardian of J.T., a minor, filed against you in the Jefferson Circuit Court in Kentucky. As you know, in this lawsuit, Ms. Ensey and Ms. Hunt claim that you, while operating in your capacity of Director of Kidz University, Inc., abused minors D.E. and J.T., who were children that attended daycare at Kidz University where you worked as director at the time. The lawsuit references allegations between May 18, 2015 and May 21, 2015 and was filed with the Court on December 22, 2015. It is Shelter's understanding that you have been operating as a *pro se* defendant since that time, having filed responsive pleadings on our own behalf and having appeared to give a deposition without counsel. Based on the information presently known, we write to inform you that we must deny coverage for the claims against you in this lawsuit.

The First Amended Complaint includes the following allegations against you:

1. You physically, violently abused D.E. and J.T., minors (Complaint ¶7);
2. By virtue of pleading guilty to two (2) counts of violation of KRS 508.030, you admitted intentionally or wantonly causing physical injury to D.E. and J.T., minors (Complaint ¶10);
3. You were the Director of Kidz University child care center the entire time D.E. and J.T. attended (Complaint ¶12);
4. You had been tormenting, torturing and physically and mentally abusing and assaulting and battering D.E. and J.T. for much of their young, short lives (Complaint ¶16);
5. You, while employed by Kidz University, Inc. struck D.E. eleven (11) times on the body, slammed J.T. headfirst into a door frame, dragged one or both boys from a room by the arm, pushed D.E. backward violently then pushed him even harder as he stumbled causing him to fall to the floor as you towered over him (Complaint ¶20);
6. You admitted to two (2) charges of intentionally or wantonly causing physical injury to D.E. and J.T., minors (Complaint ¶23);

Presiding Judge: HON. A. C. MCKAY CHAUVIN (630220)

EXH.: 000001 of 000006

EXHIBIT Three (3)

Carrie Blankenship
December 6, 2016
Page 2

7. Your conduct was either intentional or reckless (Complaint ¶34);

8. You physically and violently beat multiple 4-or 5-year old children (Complaint ¶35);

9. Your acts and omissions were negligent, reckless, grossly negligent and done with malice, oppression, and wanton disregard for the safety of D.E. and J.T., and were a substantial factor in causing D.E.'s and J.T.'s serious and extreme physical, emotional and psychological injuries and damages (Complaint ¶40);

10. Your acts and omissions in failing to provide adequate and timely warnings to prevent such abuse, assault and battery as D.E. and J.T. suffered from occurring on the premises of the daycare was negligent, reckless, grossly negligent and done with malice, oppression, and wanton disregard for the safety of D.E. and J.T. (Complaint ¶45);

11. You failed to properly train and supervise Nikoletta Nunley (Complaint ¶51);

12. You knew or though the exercise of reasonable care should have known that Nikolette Nunley was mentally and physically abusing D.E. and J.T. (Complaint ¶52);

13. Your acts of failing to hire and properly train and supervise daycare personnel, managers, directors, assistants, supervisors, cooks, and any other agent acting on your behalf to prevent abuse, assault and battery as D.E. and J.T. suffered from occurring on the premises of the daycare was negligent, reckless, grossly negligent and done with malice, oppression, and wanton disregard for the safety of D.E. and J.T. (Complaint ¶53);

14. You detained and falsely imprisoned D.E. and J.T., respectively, in one room for 20 minutes and against a wall for four minutes by conduct involving willful and unprovoked aggression (Complaint ¶56);

15. Your conduct constituted gross negligence, oppression, fraud, malice or common law bad faith, with willful and wanton disregard for the life, health and rights of the Plaintiffs and was such an extreme departure from ordinary care as to entitle the Plaintiffs to punitive damages (Complaint ¶63).

According to Shelter's records you had a Homeowners Insurance Policy (HO3 KY1), 16-71-4659530-1 ("Policy") associated with your home located at 163 Beechnut Court in force when these allegations occurred. Your Policy provides coverage subject to its terms, conditions and exclusions. If you need another copy of your Policy, please let us know.

This Policy states:

## HOMEOWNERS INSURANCE POLICY
## SPECIAL COVERAGE FORM 3

### DEFINITIONS USED THROUGHOUT THIS POLICY

1. **Accident** means an action or occurrence, or a series of actions or occurrences, that:
   (a) Started abruptly;
   (b) During the policy period; and
   (c) Directly resulted in **bodily injury** or **property damage**.

If an action or occurrence that started abruptly continues over a period of time and ultimately results in **bodily injury** or **property damage** that cannot be definitely attributed to any one specific action or occurrence, all such **bodily injury** or **property damage** is, under this policy definition, only one **accident**. If a series of abrupt actions or

Presiding Judge: HON. A. C. MCKAY CHAUVIN (630220)

EXH : 000002 of 000006

Filed          17-CI-004895   09/15/2017        David L. Nicholson, Jeff**NOT ORIGINAL** DOCUMENT
Carrie Blankenship                                                    10/12/2017 07:23:33 AM
December 6, 2016                                                      70008
Page 3

occurrences ultimately results in **bodily injury** or **property damage** that cannot be definitely attributed to any one specific action or occurrence, all such actions and occurrences, under this policy definition, constitute only one **accident**.

**Accident** does not mean:
(a)      An action or occurrence that any **insured** intended to result in **bodily injury**, or **property damage**, of any type;
(b)      An action or occurrence that is intended by any **insured**, if a reasonable **individual** would expect it to result in **bodily injury**, or **property damage**, of any type; or
(c)      An intentional action by any **person** that does not immediately result in **bodily injury** or **property damage**, but ultimately does result in such because of its repetition or the repetition of similar actions.
[ ]

5.       **Business** means any activity for which the person engaged in that activity receives compensation of any kind, or reasonably expects to receive compensation of any kind. [ ]

21.      **Insured** means:
(a) **You**;
[ ]

22.      **Insured premises** means:
(a) The **residence premises**;
[ ]

36.      **Punitive damages** means a monetary award imposed to punish a wrongdoer and to deter others from similar conduct. [ ]

52.      **You** means any **person** listed as a **named insured** in the **Declarations** and, if that **person** is an **individual**, his or her **spouse**.

## GENERAL AGREEMENTS APPLICABLE TO ENTIRE POLICY

1.  WHAT TO DO IN CASE OF **BODILY INJURY** OR **PROPERTY DAMAGE**
In the event of an **accident** covered under this policy, the **insured** must promptly take all of the following actions:
(a) Notify **us** or **our** agent as soon as possible. The notice must give:
(1) **Your** name and policy number;
(2) The time, place and circumstances of the **accident**; and
(3) The names and addresses of all injured **individuals** and witnesses.
(b) Cooperate with **us**, and assist **us** in any matter relating to a **claim**.
(c) Send **us** all correspondence and all legal papers that relate to any **claim**, made by anyone, against **us** or against the **person** seeking such coverage.
[ ]

## SECTION II – PERSONAL LIABILITY AND MEDICAL PAYMENTS PROTECTION

Presiding Judge: HON. A. C. MCKAY CHAUVIN (630220)

EXH : 000003 of 000006

Carrie Blankenship
December 6, 2016
Page 4

## COVERAGE E – PERSONAL LIABILITY
ADDITIONAL DEFINIATION USED IN COVERAGE E

In Coverage E:

**Damages** means the money an **insured** is legally obligated to pay another **person** for **bodily injury**, or **property damage**, caused by an **accident**. But **damages** does not include **punitive damages** [ ].

### INSURING AGREEMENT
Subject to the limits of **our** liability for this coverage stated in this section, **we** will pay **damages** on behalf of an **insured**.

### EXCLUSIONS
**We** do not cover:

2.  **Damages** arising out of the rendering, or failing to render, professional services.
3.  **Damages** arising out of **business** activity if that activity caused, or contributed to cause, the **damages**.
    [ ]
4.  **Damages** arising out of the condition of any **premises owned, rented,** or controlled by, an **insured** other than the **insured premises**. [ ]
5.  **Damages** arising out of **bodily injury** or **property damage** that any **insured** intended to cause.
6.  **Damages** arising out of **bodily injury** or **property damage** that a reasonable **individual** would expect to result from the intentional acts of any **insured**.
    [ ]
17. **Damages** arising out of any activity of any **insured** that would constitute a crime under the laws of the state in which such activity occurred, whether or not such **insured** is actually charged with a crime for that activity.

## COVERAGE F – MEDICAL PAYMENTS TO OTHERS
### INSURING AGREEMENT
Subject to the limit of **our** liability stated in this section, **we** will pay the **reasonable charges** for **necessary goods and services** incurred within three years after the date of a **covered injury**.
ADDITIONAL DEFINITIONS USED IN THIS COVERAGE

1.  **Covered injury** means a **bodily injury,** caused by an **accident** that occurred:
    (a) While the injured **individual** was on an **insured premises** with the permission of the **insured,** or
    (b) While the injured **individual** was elsewhere, if the **bodily injury**:
        (1) Resulted from the condition of the **insured premises;**
        (2) Was caused by an **insured;**
        [ ]

### EXCLUSIONS
**We** do not cover charges related to:

3.  **Bodily injury** arising out of the rendering or failing to render professional services.
4.  **Bodily injury** arising out of the **business** of any **insured**.
6.  **Bodily injury** arising out of any premises **owned, rented** or controlled by any **insured** that is not an **insured premises**. [ ]
7.  **Bodily injury** that any **insured** intended to cause.

Presiding Judge: HON. A. C. MCKAY CHAUVIN (630220)

EXH : 000004 of 000006

Carrie Blankenship
December 6, 2016
Page 5

8.    **Bodily injury** that a reasonable **individual** would expect to result from the intentional acts of any **insured**.

14.   **Bodily injury** arising out of any activity of any **insured** that would constitute a crime under the laws of the state in which such activity occurred, whether or not such **insured** is actually charged with a crime for that activity.

From the information we have reviewed, it appears that the allegations contained in the lawsuit do not constitute an "accident" as defined by the Policy which would qualify for coverage under the Personal Liability portion of the Policy. Even if the allegations constituted an accident, they are excluded from liability coverage as being one or more of the following: (a) damages arising out of the rendering, or failing to render, professional services; (b) damages arising out of business activity if that activity caused, or contributed to cause, the damages; (c) damages arising out of the condition of any premises owned, rented, or controlled by, an insured other than the insured premises; (d) damages arising out of bodily injury or property damage that any insured intended to cause; (e) damages arising out of bodily injury or property damage that a reasonable individual would expect to result from the intentional acts of any insured, and (f) damages arising out of any activity of any insured that would constitute a crime under the laws of the state in which such activity occurred, whether or not such insured is actually charged with a crime for that activity.

Additionally, from the information we have reviewed, it appears that the allegations contained in the lawsuit do not constitute a "covered injury" as defined by the Policy which would qualify for coverage under the Medical Payments to Others portion of the Policy. Even if the allegations constituted a covered injury, they are excluded from medical payments coverage as being one or more of the following: (a) bodily injury arising out of the rendering, or failing to render, professional services; (b) bodily injury arising out of business of any insured; (c) bodily injury arising out of any premises owned, rented, or controlled by, any insured that is not an insured premises; (d) bodily injury that any insured intended to cause; (e) bodily injury that a reasonable individual would expect to result from the intentional acts of any insured, and (f) bodily injury arising out of any activity of any insured that would constitute a crime under the laws of the state in which such activity occurred, whether or not such insured is actually charged with a crime for that activity.

Punitive damages are also excluded from personal liability and medical payment coverage.

Finally, the Policy required that you provide Shelter with (a) prompt notice of the claims being made against you, (b) cooperation and assistance in matters related to the claims and (c) all correspondence and legal papers related to the claims. However, Shelter was not informed of the claims being made against you until over nine (9) months after the lawsuit was filed, and after you had filed responsive pleadings on your own behalf and had given a deposition without legal representation.

For the above reasons, Shelter is denying coverage arising out of or related to the claims against you in this lawsuit.

David L. Nicholson, Jefferson Circuit Clerk NOT ORIGINAL DOCUMENT
10/12/2017 07:23:33 AM
70008

Carrie Blankenship
December 6, 2016
Page 6

    Shelter reserves each and every right it has under the Policy and under applicable law, including the right to deny any claim for other reasons, and the right to deny any claim based upon any additional information that may come to our attention in the future.

    If you or anyone you know has information which would establish or suggest that our position in this letter is erroneous in any respect, please contact me as soon as possible. Any additional information provided will receive prompt and careful consideration.

Sincerely,

Jeffery M. Guillory
Senior Litigation Attorney

Presiding Judge: HON. A. C. MCKAY CHAUVIN (630220)

EXH : 000006 of 000006