UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:17-CV-642-TBR

LISA S. ENSEY, AS PARENT and
STATUTORY GUARDIAN ON
BEHALF OF D.E., MINOR

and

KIMBERLY HUNT, AS LEGAL
GUARDIAN ON BEHALF OF J.T., MINOR,　　　　　　　　　　　　　　　　PLAINTIFFS

v.

SHELTER GENERAL INSURANCE COMPANY
and SHELTER MUTUAL INSURANCE
COMPANY,　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiffs Lisa S. Ensey and Kimberly Hunt's, ("Plaintiffs"), Motion for Judgment on the Pleadings Pursuant to Federal Rules of Civil Procedure 12(c) and Motion for Execution of Money Judgment Pursuant to Federal Rules of Civil Procedure 69. [R. 10.] Defendants Shelter General Insurance Company and Shelter Mutual Insurance Company, ("Shelter"), responded, [R. 11], and Plaintiffs replied, [R. 12.] Fully briefed, this matter is now ripe for adjudication. For the reasons stated herein, Plaintiffs' Motion for Judgment on the Pleadings Pursuant to Federal Rules of Civil Procedure 12(c), [R. 10], is **DENIED**. Plaintiffs' Motion for Execution of Money Judgment Pursuant to Federal Rules of Civil Procedure 69 is **DENIED**.

**BACKGROUND**

1

On May 31, 2017, a jury in Jefferson Circuit Court awarded $2.5 million to D.E., a minor, and $1.5 million to J.T., a minor, against Carrie Blankenship for failure to comply with her duties as Director of Kidz University, Inc. to supervise students, supervise and train staff, and adhere to and comply with state rules and regulations "concerning child abuse prevention, training and reporting of actual and/or suspected child abuse, and said failure was a substantial factor in causing injury to both minors J.T. and D.E.." [R. 1-1 at 4 (Complaint); 13 (Judgment).] Before the trial, in a letter dated December 7, 2016, Shelter, carrier of Blankenship's homeowner's insurance policy, denied coverage to Blankenship under the policy and refused to defend her in the action against her in Jefferson Circuit Court. [*Id.* at 3-4.] On July 4, 2017, as well as on August 9, 2017, counsel for Plaintiffs demanded payment from Shelter under Blankenship's policy for the $4 million judgment. [*Id.* at 4.] Shelter still denied coverage and refused to pay. [*Id.*]

Plaintiffs filed this action in Jefferson Circuit Court on September 15, 2017 to collect the $4 million judgment from Shelter. [*Id.*] Shelter removed the case to federal court on October 18, 2017. [R. 1.] On February 16, 2018, Plaintiffs filed the Motion for Judgment on the Pleadings and Motion for Execution of Money Judgment that is currently before the Court. [R. 10.]

**STANDARD**

"For purposes of a motion for judgment on the pleadings [under Rule 12(c) ], all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (quoting *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)). However, the Court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* at 581–82 (quoting *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999)). "A Rule

2

12(c) motion 'is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.' " *Id*. at 582 (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)).

## DISCUSSION

The crux of Plaintiffs argument is as follows:

> If Defendants *breached their duty* to defend Carrie Blankenship then they have *waived their ability* to challenge coverage. They might also be estopped from doing so however redundant the consideration and analysis because the same fact pattern giving rise to estoppel in this case triggers waiver, namely, wrongfully denying coverage and failing to defend.

[R. 12 at 2 (Reply).] More specifically, Plaintiffs argue that Shelter has waived the right to argue coverage in this matter because "by breaching its duty to defend, Shelter waived any right to not only enforce a provision of the contract, but by logical extension, if no provision of the contract may be enforced, then in its entirely the contract may no longer be challenged or argued." [*Id*. at 10.] Plaintiffs argue that Shelter is estopped from arguing coverage because if "the possibility or potentiality of coverage existed and Shelter was either reckless, negligent or intentional in denying coverage to Carrie Blankenship, then Shelter made a false representation," and, when Shelter denied coverage, "Blankenship detrimentally relied upon that denial by proceeding *pro se* and making poor and ill-advised decisions in her defense and in her negotiations and interactions with Plaintiffs' counsel." [1] [*Id*. at 10-11.]

As an initial matter, Plaintiffs have cited no case law in support of their theory for waiver or estoppel. In each instance, Plaintiffs mention the doctrine of waiver or estoppel and then boldly attempt to connect it to the allegation that Shelter breached a duty to defend. With regards to estoppel, Plaintiffs state the elements required to prove estoppel and then assert that if Shelter

---

[1] The Court also acknowledges Plaintiffs' argument that Shelter's denial of coverage letter did not qualify as a reservation of rights letter. [R. 10 at 7-10.] The Court finds this irrelevant to the matter at hand because both parties agree that the letter did not serve as a reservation of rights. [*Id*.; R. 11 at 14 (Response).] Rather, Shelter argues that it served as a notice of denial of coverage. [R. 11 at 14.]

3

wrongly denied coverage it was a false representation. [*See* R. 12 at 3.] Plaintiffs provide no further, legitimate explanation or support in case law. In its argument for waiver, without stating the requirements of waiver, Plaintiffs claim that by allegedly breaching its duty to defend, Shelter waived the right to argue coverage under the insurance policy. [*See id*. at 10.] Again, Plaintiffs fail to give further explanation or support in case law. Nor can the Court can find legal support for either theory.

Additionally, both theories of waiver and estoppel provided by Plaintiffs depend on whether Shelter breached its duty to defend by wrongfully denying coverage to Blankenship. Yet, Plaintiffs have not established that Shelter breached a duty to defend Blankenship. "Under Kentucky law, a court should determine at the outset of litigation whether an insurance company has a duty to defend its insured by comparing the allegations in the underlying complaint with the terms of the insurance policy." *Westfield Ins. Co. v. Tech Dry, Inc.,* 336 F.3d 503, 507 (6th Cir. 2003). "[A]n insurer has a duty to defend if there is any allegation which potentially, possibly or might come within the coverage terms of the insurance policy." *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.,* 306 S.W.3d 69, 79 (Ky. 2010) (quotation omitted).

Throughout Plaintiffs' Motion for Judgment on the Pleadings and their Reply, Plaintiffs often assert that the negligence allegations of the First Amended Complaint are covered by Blankenship's policy. [*See, e.g.* R. 12 at 8 ("[t]here can simply be no disputing that the multiple negligence allegations of the First Amended Complaint potentially, possibly or might come within the coverage of Carrie Blankenship's Policy").] However, Plaintiffs never cite to a specific term in the insurance policy with which the Court should compare an allegation in the underlying complaint. Plaintiffs come close by citing this district's findings in *West American Insurance Company v. Embry* to support the argument that the negligent acts of Blankenship

4

qualify as an "accident" that would be covered under the policy. [R. 10 at 13.] However, upon closer examination, the portion quoted by Plaintiffs involved the court interpreting the holding of the Sixth Circuit in *Westfield Insurance Co. v. Tech Dry, Inc.,* in which the Sixth Circuit held that "[w]hen a policy contains an exclusion for intentional acts by the insured, coverage must be provided 'as long as the injury was not actually and subjectively intended' by the insured," and, therefore, "[s]ince a claim of negligent hiring does not allege intentional injury by the insured, it is not excluded under the policy." *W. Am.*, No. 3:04-CV-47-H, 2005 WL 1026185, at *2 (W.D. Ky. April 25, 2005) (Heyburn, J.) (quoting *Westfield*, 336 F.3d at 510). The court stated that "[l]ike negligent hiring of an employee, negligent supervision of a child would constitute an 'occurrence' within the language of the policy here, thus requiring West American to defend and indemnify in the underlying action." *W. Am.*, No. CIV.A. 3:04CV-47-H, 2005 WL 1026185, at *2. Despite this statement, the court in *West American* went on to hold that the insurance company defendant was *not required* to defend the plaintiff due to a specific provision that excluded all claims of bodily injury "arising out of" the negligent act at issue, in that case it was sexual molestation. *Id*. at *6.[2] Furthermore, the facts of *West American* are distinguishable from most of the jury findings against Blankenship in that the insured in *West American* was only liable for "negligence in failing to discover and remedy a problem," alleging "no intentional act on the part of Defendant." *Id*. Still, the Court acknowledges the possible comparison between "the negligent supervision of a child" in *West American* and Blankenship's actions.

---

[2] The Court notes that Plaintiffs also cite to the findings of the Ohio Supreme Court's holding in *Safeco Insurance Company of America v. White, et al.* to further support this point. [R. 10 at 13.] However, in that case, the Ohio Supreme Court specifically cited *West American* as taking the opposite approach by "finding that the injuries from negligent conduct related to an intentional tort are inextricably related to the injuries arising from the intentional tort, and therefore coverage is precluded for both under the intentional-act and illegal-act exclusions." *Safeco Ins. Co. of Am. v. White*, 122 Ohio St. 3d 562, 573 (Ohio 2009).

However, even if Plaintiffs could successfully apply the allegations in the Complaint to a term under the policy, there is still a list of exclusions in the policy that Shelter proposes prohibit coverage. These include:

1. Damages arising out of the rendering, or failing to render, professional services;
2. Damages arising out of business activity if that activity caused, or contributed to cause, the damages
3. Damages arising out of the condition of any premises owned, rented, or controlled by, an insured other than the insured premises;
4. Damages arising out of bodily injury or property damage that a reasonable individual would expect to result from the intentional acts of any insured;
5. Damages arising out of any activity of any insured that would constitute a crime under the laws of the state in which such activity occurred, whether or not such insured is actually charged with a crime for that activity.

[R. 11 at 5-6 (citing R. 1-1 at 32).] Plaintiffs only address one of these exclusions in their motions; leaving the rest unchallenged.

Specifically, Plaintiffs argue that the "business activity" exclusion does not apply because Kentucky case law, specifically *Eyler v. Nationwide Mutual Fire Insurance Co.* and *Lenning v. Commercial Union Insurance Co.*, seems to "couch the business activity or business pursuit exclusion as one of ownership in the business venture or activity." [R. 10 at 14-15.] Neither of the cited cases stands for this proposition. In *Eyler*, the Supreme Court of Kentucky construed a "business pursuit" exclusion in an insurance policy to require "a determination that the activity be for profit and that it be a continuous, customary activity." 824 S.W.2d 855, 858 (Ky. 1992). The court held that the insured's participation in the "business" in that case was limited to investing money and protecting his investment, and, therefore, his actions were "woefully insufficient to qualify as a business pursuit . . . ." *Id.* at 859. The court never stated that ownership of the business was necessary to qualify as a business pursuit. In *Lenning*, the Sixth Circuit applied the two factor test of *Eyler* in finding that the insureds that built and sold a home were

engaged in a business pursuit when they held themselves out as builders and they intended to profit from building and selling the house over a period of time. *See Lenning*, 260 F.3d 574, 584-85 (6th Cir. 2001). Nowhere in the opinion did the Sixth Circuit require that the insureds own the business at issue. Indeed, the court quoted a portion of *Eyler* that suggests the opposite:

> To constitute a business pursuit, there must be two elements: first, continuity, and secondly, the profit motive; as to the first, there must be a customary engagement or a stated occupation; and as to the latter, there must be shown to be such activity as a means of livelihood, a gainful employment, means of earning a living procuring subsistence or profit, commercial transactions or engagements.

*Lenning*, 260 F.3d at 584 (citing *Eyler*, 824 S.W.2d at 859.) If anything, *Lenning* suggests that Blankenship's employment at Kidz University, Inc. could be considered a business pursuit: her employment as director was "a stated occupation" and she engaged in that activity "as a means of earning a living."[3] Thus, the Court holds that Plaintiffs have failed to establish that the "business activity" exclusion does not apply to these circumstances.[4]

As a final matter, Plaintiffs also argued that the fact that Shelter did not view the surveillance video from Kidz University, Inc. amounted to a failure of its "duty to defend" requirements and a violation of KRS 304.12-230(4). [R. 10 at 16.] Plaintiffs provided no case law to support this assertion. "In Kentucky, a claim for bad faith based on an insurer's denial of coverage requires proof of the following: (1) the insurer was obligated to pay the claim under the terms of the policy; (2) the insurer lacked a reasonable basis in law or fact for denying the claim; and (3) the insurer either knew that there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed." *Pizza Magia Int'l, LLC v. Assurance*

---

[3] Granted, the term at issue in this case is "business activity." However, the Court notes that this quote contradicts plaintiffs' interpretation of *Lenning*.
[4] The Court notes that *Lenning* also sheds doubt on Plaintiff's claim that *James Graham Brown Foundation, Inc. v. St. Paul Fire Marine Insurance Co.* is the "seminal case which dooms Shelter." [R. 10 at 10.] In *Lenning*, the Sixth Circuit held that *Brown Foundation* could be distinguished from the matter before it because the court in *Brown Foundation* defined "occurrence" in the context of a comprehensive general liability policy, whereas the insured in *Lenning* had a homeowner's insurance policy. *See Lenning*, 260 F.3d at 583-84. Similarly, the matter before the Court also involves the interpretation of a homeowner's insurance policy.

*Co. of Am.*, 447 F. Supp. 2d 766, 779 (W.D. Ky. 2006) (Heyburn, J.) (citing Ky. Rev. Stat. Ann. § 304.12-230). In *Pizza Magia*, the court found that the insurance company's failure to defend was not reckless or intentionally harmful when the claims adjuster read the complaint and compared it to the policy, and there was no proof of reckless or evil motive. *Id*. at 780. Similarly, here, Jeffrey Guillory, the litigation attorney for Shelter, compared the allegations in the Complaint to the policy in his letter to Blankenship, and there is no proof in the record of reckless or evil motive. [*See* R. 1-1 at 33.] An alleged failure to watch the surveillance video is not necessarily determinative that Shelter breached its duty to defend or violated KRS 304.12-230(4) by not watching the surveillance video.

In sum, Plaintiffs are not clearly entitled to judgment as a matter of law. Plaintiffs' theories as to waiver and estoppel both depend on whether shelter breached its duty to defend. Yet, Plaintiffs have failed to establish that Shelter breached that duty. Furthermore, Plaintiffs provide no case law to support these theories, and the Court is unable to find case law that supports either theory of waiver or estoppel. The Court emphasizes that this holding does not mean that Shelter has successfully established that Blankenship was not covered under the insurance policy. That may be argued and decided at a later date. The current motion is premature and lacks merit at this stage of the proceedings.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED**:

Plaintiffs' Motion for Judgment on the Pleadings Pursuant to Federal Rules of Civil Procedure 12(c), [R. 10], is **DENIED**. Plaintiffs' Motion for Execution of Money Judgment Pursuant to Federal Rules of Civil Procedure 69 is **DENIED**.

**IT IS SO ORDERED**.

cc: Counsel of Record