UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:17-CV-642-RGJ

LISA S. ENSEY, AS PARENT AND
STATUTORY GUARDIAN ON
BEHALF OF D.E., MINOR

Plaintiffs

and

KIMBERLY HUNT, AS LEGAL
GUARDIAN ON BEHALF OF J.T.,
MINOR

v.

SHELTER GENERAL INSURANCE
COMPANY AND SHELTER MUTUAL
INSURANCE COMPANY

Defendants

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Defendants, Shelter General Insurance Company and Shelter Mutual Insurance Company move for partial summary judgment (the "Motion"). [DE 17]. Briefing is complete.[1] [DE 19; DE 21; DE 22]. The matter is ripe. For the reasons below, the Court **GRANTS** Defendant's Motion for Partial Summary Judgment [DE 17].

### I. BACKGROUND

In May 2015, Defendant Shelter Mutual Insurance Company ("Defendant") issued a homeowner's insurance policy (the "Policy") to Mark Blankenship for the Blankenship's residence at 163 Beechnut Court in Shepherdsville, Kentucky. [DE 17-8 at 368].

---

[1] Under LR 7.1, "[m]otions and responses may not exceed 25 pages without leave of Court." The briefing in this matter greatly exceeded the limits set forth in LR 7.1. [*See* DE 17-1 (32 pages) and DE 19 (39 pages)]. Hereafter, briefs in this case that fail to comply with the local rules will not be considered and will be stricken.

In December 2015, Plaintiffs filed suit (the "Kentucky suit") against Carrie Blankenship ("Blankenship"), Mark's wife, in Jefferson County Circuit Court. [DE 17-1 at 269]. Plaintiffs alleged that "[b]etween May 18, 2015 and May 21, 2015, D.E. and J.T., Minors, were physically, violently abused by . . . Blankenship . . . Director of the child care center, Kidz University, Inc., and at least one other agent/employee of Kidz University, Inc., Defendant, Nikoletta Nunley, in whose care they were left." [DE 21-1 497]. Plaintiffs brought claims of assault and battery, negligence, negligent supervision, negligence *per se*, intentional infliction of emotional distress, premises liability, failure to warn, false imprisonment, violation of the Kentucky Civil Rights Act, and punitive damages. [DE 17-4 at 325-333]. Kidz University, Inc. was located at 8301 Shepherdsville Road, Louisville, Kentucky. [DE 21-2 at 496].

In December 2016, after Blankenship notified Defendant of the Kentucky suit, Defendant "den[ied] coverage arising out of or related to the claims against [her]" in the Kentucky suit. [*See* DE 17-5]. Defendant, therefore, declined to defend her at trial. [DE 1-1 at 9].

Plaintiffs' case against Blankenship went to trial. At the close of trial, the court instructed the jury only on the claims for negligence, negligent supervision, and negligence *per se*. [DE 17-1 at 273]. The jury found Blankenship liable—in her official capacity as Director of Kidz, University—for failing to: 1) "supervis[e] the students"; 2) "supervise and train the staff of Kidz University"; and 3) "adhere to and comply with all rules and regulations of the Commonwealth of Kentucky concerning child abuse prevention, training, and report of actual and/or suspected child abuse." [DE 17-10 at 403]. The jury also found that Blankenship's breach of her duties was a "substantial factor in causing injury to both minors JT and DE." *Id.* The jury awarded Plaintiffs $4,000,000 in damages. [DE 17-7 at 363, 365]. Jefferson Circuit Court Judge Mary Shaw, the

presiding judge in the Kentucky suit, detailed the jury's findings in her final judgment (the "Judgment"). [*See* DE 17-10].

After Defendant declined to indemnify Blankenship, Plaintiffs filed suit in Jefferson Circuit Court against Defendant, alleging breach of contract, contractual breach of implied covenant of good faith and fair dealing, tortious breach of the implied covenant of good faith and fair dealing, bad faith, unfair trade practices, intentional infliction of emotional distress, and negligent infliction of emotional distress. [DE 1-1 at 12-16]. Defendant removed the case to this Court. [DE 1]

Defendant now moves for partial summary judgment "on the issue of whether the Policy issued by Shelter Mutual provided coverage for the judgment against Ms. Blankenship and whether Shelter General, which did not issue a policy to Ms. Blankenship and/or her husband has any obligation to indemnify Ms. Blankenship."[2] [DE 17-1 at 273].

## II. **STANDARD**

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of specifying the basis for its motion and showing the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the nonmoving party must produce specific facts showing a material issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Factual differences

---

[2] Based on the undisputed affidavit of Brent Truesdell, an underwriter at Shelter Insurance Companies, the Court will also grant summary judgment in favor of Shelter General because there is not a genuine issue of material fact about whether Shelter General issued the Policy. [*See* DE 17-12, Truesdell Affidavit ("No insurance policies were issued by Shelter General Insurance Company to Mark and/or Carrie Blankenship")].

3

are not considered material unless the differences are such that a reasonable jury could find for the party contesting the summary judgment motion. *Id.* at 252.

The Court must view the evidence and draw all reasonable inferences in a light most favorable to the nonmoving party. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). But the nonmoving party must do more than show some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" *Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 136 (6th Cir. 2014). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Liberty Lobby*, 477 U.S. at 252.

### III.    **DISCUSSION**

"The interpretation of an insurance contract is a matter of law." *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 507 (6th Cir. 2003) (citing *Stone v. Ky. Farm Bureau Mut. Ins. Co.*, 34 S.W.3d 809, 810 (Ky. App. 2000)). "To ascertain the construction of an insurance contract, one begins with the text of the policy itself." *Pryor v. Colony Ins.*, 414 S.W.3d 424, 430 (Ky. App. 2013). "The words employed in insurance policies, if clear and unambiguous, should be given their plain and ordinary meaning." *Nationwide Mut. Ins. Co. v. Nolan*, 10 S.W.3d 129, 131 (Ky. 1999). "[T]he terms should be interpreted in light of the usage and understanding of the average person." *Stone*, 34 S.W.3d at 811 (citing *Fryman v. Pilot Life Ins. Co.*, 704 S.W.2d 205, 206 (Ky. 1986)).

"The duty to indemnify is narrower than the duty to defend because it only arises when there is an actual basis for the insured's liability to a third party." *Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co.*, 598 F.3d 257, 269 (6th Cir. 2010) ("In order for Hillerich to be entitled to indemnification for the settlement in the first place Hillerich would have been required to show that it could have been held liable in the Baum litigation for a covered claim if there had not been a settlement, which includes looking beyond the pleadings to the evidence presented by Baum in its case-in-chief"). "The duty to defend is triggered by the 'pleadings test,' which requires a duty to defend if a complaint pleads facts that fall within a policy's coverage. The duty to indemnify, on the other hand, is triggered only after a fact finder determines the 'true facts' and these facts are within a policy's coverage." *Am. Guarantee & Liab. Ins. Co. v. Norfolk S. Ry. Co.*, 278 F. Supp. 3d 1025, 1041 (E.D. Tenn. 2017); *See AMCO Ins. Co. v. Lauren-Spencer, Inc.*, 500 F. Supp. 2d 721, 726 (S.D. Ohio 2007) ("[A] duty to indemnify arises from the conclusive facts and resulting judgment of the underlying litigation") (internal quotation marks and citation omitted); *See Martin Cnty. Coal Corp. v. Universal Underwriters Ins. Co.*, 792 F.Supp.2d 958, 961 (E.D.Ky.2011) (holding there are only two conceivable bases for holding an insurer liable for its insured's liabilities: a judgment or a contractual agreement between the parties that the insurer would pay for its "insured's voluntary settlements no matter whether the insured could have actually have been held liable"); *See also Cincinnati Ins. Co. v. Vance*, 730 S.W.2d 521, 524 (Ky. 1987) ("The essence of our holding is that the coverage question will turn on the *true facts as judicially determined* and not on the claims of either party, or on the allegations of the complaint against the putative insured") (emphasis added).

**A. Exclusions at Issue.**

Defendant argues that these five exclusions in Coverage E of the Policy preclude coverage for Blankenship's personal liability in the Kentucky suit:

> COVERAGE E – PERSONAL LIABILITY
> ADDITIONAL DEFINTION USED IN COVERAGE E
> In COVERAGE E:
>
> Damages means the money an insured is legally obligated to pay another person for bodily injury, or property damage, caused by an accident.
> . . .
> EXCLUSIONS
> We do not cover:
> . . .
> 2. Damages arising out of the **rendering, or failing to render, professional services**.
> 3. Damages arising out of **business activity** if that activity caused, or contributed to cause, the damages.
> . . .
> 5. Damages **arising out of bodily injury** or property damages that any insured **intended to cause**.
> 6. Damages **arising out of bodily injury** or property damage that a **reasonable individual would expect to result** from the **intentional acts** of any insured.
> . . .
> 17. Damages arising out of any **activity** of an insured **that would constitute a crime** under the laws of the state in which such activity occurred, whether or not such insured is actually charged with a crime for that activity.

[DE 17-8 at 387-388] (emphasis added)

Plaintiff disagrees, arguing that 1) "because [Defendant's] failure to defend constitutes bad faith . . . [Defendant] may not assert exclusions purporting to deny coverage under the Blankenships' homeowner's policy"[3]; and 2) "[Defendant] errs in its interpretation of its policy

---

[3] This argument is unsupported by binding law. As Plaintiffs acknowledge, their argument is about what the law *should* be, not what the law is: "A breach of duty to defend *should* be construed as waiver of the right to contest coverage." [DE 19 at 423] (emphasis added). Plaintiffs have not provided the Court with a binding case that directly states this novel interpretation of coverage law. The Court, therefore, declines to adopt it.

exclusions and of Kentucky cases articulating the relevant principles of insurance law." [DE 22 at 556].

## B. True Facts in the Judgment.

The jury in the Kentucky suit found Blankenship negligent for failing to: 1) supervise the students; 2) supervise her staff; 3) and comply with the rules and regulations of the Commonwealth of Kentucky. [DE 17-10 at 403]. In determining whether Defendant needs to indemnify Blankenship, the Court will only consider the "true facts" in the Judgment. *See Vance*, 730 S.W.2d at 524. As discussed below, the Court finds that the "business activity" exclusion applies. Because the "business activity" exclusion applies, the Court need not consider the other exclusions.[4]

### 1. The "business activity" exclusion.

Defendant argues that the "business activity" exclusion applies because Blankenship's "liability for negligence is directly related to her employment as the Director of Kidz University." [DE 17-1 at 280]. Plaintiffs, conversely, contend that the exclusion does not apply because the bodily injuries sustained by the D.E. and J.T. did not arise out of Defendant's business activities.

---

[4] Summary judgment is inappropriate on the "rendering or failing to render professional services" exclusion because Kentucky courts "have recognized that the term 'professional services' is . . . defined as requiring an exercise of judgment or training" and neither party has provided the Court with any information about the extent, if any, of Blankenship's training and experience. *Dibeneditto v. Med. Protective Co.*, 3 F. App'x 483, 486 (6th Cir. 2001). Genuine issues of material fact therefore exist about whether Blankenship's negligence constitutes a "fail[ure] to render professional services."

Summary judgment also is inappropriate on the "criminal activity" and "intentional acts" exclusions because—despite Defendant's efforts to shoehorn Blankenship's negligent acts into those exclusions using the doctrine of "inferred intent"—the "inferred intent" doctrine is limited to intentional acts and the Court can only consider Blankenship's negligent conduct. *Stone v. Kentucky Farm Bureau Mut. Ins. Co.*, 34 S.W.3d at 813 (Ky. Ct. App. 2000) (quoting *Wiley v. State Farm Fire & Casualty Co.*, 995 F.2d 457 (3rd Cir.1993) ("[W]here an insured's conduct is both *intentional and of such a nature and character that harm inheres in it*, that conduct affords sufficiently clear demonstration of intent to harm"] (emphasis added).

Finally, summary judgment is inappropriate on the "expected damages" exclusion because the Court is limited to considering Blankenship's negligent conduct and Defendant's argument is that "[a]ny reasonable individual would expect these types of damages to result from the *intentional conduct of Ms. Blankenship*." [DE 17-1 at 296] (emphasis added).

7

[DE 19 at 442-443] ("The required causal connection is simply missing . . . the basis for Blankenship's legal liability was her negligence in supervising Nikoletta Nunley and in reporting any misconduct in which Nunley may have engaged. The actual, proximate cause of the children's bodily injury, however, was acts of physical abuse by Nunley . . . Proximity in physical space is all [Defendant] has. That demonstration falls far short of proof that these damages arose from business activity").

The Policy's "business activity" exception excludes "[d]amages arising out of business activity if that activity caused, or contributed to cause, the damages." [DE 17-8 at 388]. The Policy defines "business" as "any activity for which the person engaged in that activity receives compensation of any kind, or reasonably expects to receive compensation of any kind." *Id.* at 372. The Policy does not define "arising out of," but the Kentucky Supreme Court has found that "'arising out of' . . . connotes the need for a direct consequence or responsible condition." *Eyler v. Nationwide Mut. Fire Ins. Co.*, 824 S.W.2d 855, 857 (Ky. 1992); *see Hugenberg v. W. Am. Ins. Co./Ohio Cas. Grp.*, 249 S.W.3d 174, 186 (Ky. Ct. App. 2006) ("The words 'arising out of use' in an automobile liability insurance policy, are broad, general and comprehensive terms meaning 'originating from,' or 'having its origin in,' 'growing out of' or 'flowing from' . . . All that is required to come within the meaning of the words 'arising out of the use of the automobile' is a causal connection with the accident") (quoting *Insurance Co. of North America v. Royal Indemnity Co.*, 429 F.2d 1014, 1017–1018 (6th Cir.1970)).

*Holzknecht v. Kentucky Farm Bureau Mut. Ins. Co.* is instructive. 320 S.W.3d 115, 120 (Ky. App. 2010). In *Holzknecht*, the Court of Appeals considered the meaning and applicability

of a "business pursuits" exclusion[5] in an insurance policy. *Id.* at 118. Plaintiff alleged that the defendants were liable for injuries sustained by her daughter while at their daycare. *Id.* at 116. Plaintiff alleged that defendants breached their duty of ordinary care by not preventing their dog from mauling her daughter. *Id.* The Court of Appeals found that the "business pursuits" exclusion applied and precluded coverage because "the child was on the premises (where she undoubtedly had a right to be) when she was mauled, and her presence on the premises was plainly attributable to and connected with the business." *Id.* at 119.

**2. Analysis.**

Here, the jury in the Kentucky suit found Blankenship negligent in her official capacity as the Director of Kidz University and found that her negligence was a "substantial factor in causing injury to both minors JT and DE." [DE 17-10 at 403]. The jury's "substantial factor" finding is equivalent to a finding that her negligence caused or was the proximate cause of the Plaintiffs' injuries. *See Morales v. Am. Honda Motor Co.*, 71 F.3d 531, 537 (6th Cir. 1995) ("[C]ausation or proximate cause is defined by the substantial factor test: was the defendant's conduct a substantial factor in bringing about plaintiff's harm?"); *See also Deutsch v. Shein*, 597 S.W.2d 141, 144 (Ky. 1980), abrogated on other grounds by *Osborne v. Keeney*, 399 S.W.3d 1 (Ky. 2012) ("Proximate cause, then, consists of a finding of causation in fact, *i.e.*, substantial cause"). Because Blankenship's negligence was a "substantial factor in causing injury," it "caused or contributed to cause" the injuries, and the injuries were therefore a "direct consequence" of her negligence and "casual[ly] connected" to it. Plaintiffs were on the premises of Kidz University when they were injured and, like the mauled child in *Holzknecht*, their "presence on the premises was plainly

---

[5] The "business pursuits" exclusion at issue in *Holzknecht* provides: "Medical payments to Others do not apply to 'bodily injury' . . . *[a]rising out of or in connection with a 'business' engaged in by an 'insured*." *Holzknecht*, 320 S.W.3d at 118 (emphasis added).

9

attributable to and connected with the business." But for Plaintiffs being on the premises of Kidz University to receive child care services, they would not have been injured. Thus, Plaintiffs' injuries "ar[ose] out of" Blankenship's "business activity" and the "business activity" exclusion applies.

As for the remaining exclusions raised by the Defendant, the Court need not consider them because the "business activity" exclusion applies.

## IV. CONCLUSION

Having thus considered the parties' filings and the applicable law, and being otherwise sufficiently advised, the Court **HEREBY ORDERS AS FOLLOWS**:

(1) Defendant's Motion for Partial Summary Judgment, [DE 17], is **GRANTED**. The Plaintiff's breach of contract claim against Shelter Mutual Insurance Company is **DISMISSED** with prejudice.

(2) All claims against Shelter General Insurance Company are **DISMISSED** with prejudice.